Next case for argument is Farmer v. United States, Ms. Chapwee. Emily Chapwee for the petitioner, Franchie Farmer. May it please the Court. In light of the Supreme Court's decision in Rosemond v. United States, Ms. Farmer's sentence under 924C should be vacated. It is undisputed that Rosemond applies retroactively in this case, and it is undisputed that the jury instructions given in Ms. Farmer's criminal trial were erroneous as a matter of law. Accordingly, the only remaining question is whether the government failed to prove that this error was, quote, We don't have any precedent on Rosemond retroactivity yet, do we? We have references to that, but I don't know that we've actually squarely addressed that. So the Court addressed the retroactive application of Rosemond in the Montana case, in which it held that Rosemond was a new substantive rule that applies retroactively, and in any case, the government concedes that point in this case, as it's done in several other cases before this Court. Right. I understand the government concedes it, but I didn't read Montana the way you do. So I think the issue is squarely presented here and needs to be decided. On that front, we would agree with the government that Rosemond announced a new rule, a substantive rule, and that that rule applies retroactively. Okay. And as we discussed in the 28th day letter that we submitted to this Court, Montana v. Cross does find that that's the case. Okay. And then we have harmless error? So in light of that, the government doesn't come close to satisfying its burden under a harmless error standard. It's forfeited the only two arguments that it now makes by failing to raise them below, and it doesn't even attempt to argue that it would prevail under the proper standard, the harmless error standard articulated in Chapman, nor could the government do so. It's evidence that Ms. Farmer had the requisite intent to commit an armed robbery, not a robbery, is extraordinarily weak. The government failed to prove beyond a reasonable doubt that Ms. Farmer had actual advanced knowledge that a gun would be used, as Rosemond now requires. Well, let me just make sure I've got the testimony together, and I'm looking. She writes, discussed with Farmer they should use a gun, and said they all agreed. The handwriting expert determined that the person who wrote the note with the demand, same handwriting as Farmer, prints possibly belong to Farmer on the note, and in the demand note, Farmer wrote the demand note which stated they had a gun. So you're correct, Your Honor, that there are two types of evidence at issue here, both of those types of evidence, the testimony of the other participants in the robbery who cooperated in the trial, and the demand note. That evidence is quite overstated in the government's brief. The results of the fingerprint analysis actually showed that Ms. Farmer's prints were not on the note, although both Ms. Rice's fingerprints and Mr. Anderson's fingerprints were, and the testimony of the government's handwriting analyst said that there were similarities between Ms. Farmer's handwriting and the handwriting on the note, but that he couldn't exclude that someone else had written the note. Furthermore, the handwriting expert's testimony actually conflicted with Rice and Anderson's story that Ms. Farmer wrote the note on the steering wheel of the car. He said that it showed no indication that it was written on a textured surface like a steering wheel. Finally, regardless of who wrote the note, there's certainly reasonable doubt as to whether that person actually thought that there were guns or whether that person wanted the recipient of the note to believe that there were guns and turn over money. Well, except the note said, this is a robbery, I have a gun, don't cause a scene, no one will get hurt, I do have a gun. That's what the note said. I understand, Your Honor. And certainly the person who wrote the note wanted whoever got it to believe they had a gun and to give them money in the robbery. But in terms of showing beyond a reasonable doubt that Ms. Farmer had actual advanced knowledge that a gun would be used, we think this just is not sufficient. As to the testimony of the other participants in the robbery, Mr. Anderson testified definitively that Ms. Farmer did not know that he had a gun, and Ms. Rice's testimony is quite weak. She claimed that she believed Ms. Farmer knew about the guns, but she could provide virtually no basis for that belief. Rice testified that Rice, not Farmer, acquired the guns, that she was the person who gave a gun to Mr. Anderson. She didn't offer any testimony that Farmer was there when she gave the gun to Mr. Anderson. She offered no testimony that Farmer ever saw she had a gun. And the testimony that she did offer was about general discussions that she supposedly had with Farmer months before the robbery occurred, when, by her own account, plans were still changing. So the most specific conversation that she recounted was one that occurred several months before the robbery, before a location had been chosen, and she recounts a discussion that she supposedly had with Ms. Farmer and Ms. Farmer's husband, Rodney, where they planned that Mr. and Mrs. Farmer would carry weapons, would go into some bank they hadn't chosen yet, and then would ride away on motorcycles. As we now know, Mr. Farmer did not participate in the crime. Ricky Anderson did. Mrs. Farmer was not the person who went into the bank. She didn't carry a gun, and no one rode away on motorcycles. But despite all that, the government wants us to believe that this one part of the plan that occurred months before, that there would be some sort of weapons used, is rock solid. Ms. Rice herself testified that when she and Ms. Farmer began planning to do a robbery, the plans at the beginning were, quote, far-fetched, and, quote, it was just a lot of talk. This is a conversation that occurred during that period. And the only other discussions that she testified to were incredibly vague. They weren't about a specific conversation that she had with Ms. Farmer. Instead, the most she could say was, quote, we discussed it. That's on 95 of the supplemental appendix. And, quote, I mean, we all agreed and you know. That's just not enough to sustain a condition under any standard, let alone the stringent standard. Why do you think it's significant that her fingerprints were not in the note? Because it creates some reasonable doubt that she wrote the note as Mr. Anderson and Ms. Rice testified. But didn't she hand the note to the teller? She didn't. Ms. Farmer was not one of the persons. Okay, so she must have looked at it. It wasn't a complicated note. What? I'm sorry. I'm not sure I understand the question. She knew it was on the note, right, about a gun. If you believe the cooperator's testimony that she wrote the note. Well, she handed the note to the teller, didn't she? No, that's not correct. She actually was driving the getaway car. She never went into the bank. Are you saying she never saw the note? That was her testimony. Her position was that she didn't write the note. Well, the handwriting expert thought she did write the note, didn't he? The handwriting expert testified that there were similarities between Ms. Farmer's handwriting and the handwriting on the note. He didn't analyze anyone else's handwriting to see if there were similarities between someone else's handwriting and the handwriting on the note. And he testified on cross-examination repeatedly that he couldn't exclude that the handwriting belonged to anyone else. So that certainly provides some evidence that it may have been permissible to believe, but it's not evidence beyond a reasonable doubt. But when you put it all together, with all the discussion of the guns and so on, why isn't that sufficient? Why couldn't a jury find that? Even if it might have been permissible for a jury to find that the evidence was sufficient, the fact remains that they didn't do so in this case. They weren't instructed about the proper standards post-Roseman. They reached a general verdict. And the government, in closing argument, actually encouraged the jury to- Do you think the general verdict was improper? No, I don't think it was improper. My point is they didn't reach the finding that Roseman now requires, that Ms. Farmer had actual advanced knowledge of a gun. That wasn't in the jury instructions. And the government encouraged the jury to find, to the contrary, that they should convict on count two the gun charge because Ms. Farmer was, quote, in on the crime. After Roseman, that's simply not enough. Well, when Wright testified about this note, she testified before the jury that she and Farmer had talked about what was going to be written. And she said that the discussion was should we display a gun or should we show them the gun or let's not display the gun or let's put it here that you do have a gun, cooperate, you know, nobody gets hurt. So we just wanted, leaving it kind of simple but to the point, to let them know we have a gun. And that's what was put on the note after the discussion, yes. So, I mean, so there was actual discussion if the jury believed Rice about the gun and the fact that a gun was present. So, again, it would have been permissible for a jury to believe that, but there's certainly reasonable doubt. There's conflicting evidence from the handwriting experts that said the note showed no- You're not supposed to find things unless they're beyond a reasonable doubt, right? Certainly, and I think that a jury wouldn't have found it based on the evidence in this case. The point is that we don't know because they weren't, Roseman hadn't been decided and they weren't correctly instructed. Because they weren't what? Correctly instructed. And the government can't meet its burden of showing that the error was harmless on this quite weak evidence. If I may, I'd like to, oh, I'm sorry. It looks like my time has expired. Okay. Thank you. Thank you, Ms. Chokley. Mr. Leggings? Good morning, Your Honors. My name is Tom Leggings and I was the counsel below, the counsel on direct appeal, and now the counsel before the court today. I guess the first point I want to get into is we dispute the notion that harmless errors- Can you keep your voice up, please? I'm sorry. Thanks. We dispute the notion that a harmless error analysis applies to this case. This is a pure Frady-Wainwright review on collateral review for cause and prejudice. The way the petitioner styled her motion in the district court was as a claim for relief because of ineffective assistance of counsel. The district court reviewed those pleadings and as is the practice, at least in our district, selected the issues that it wanted me to respond to. And the issues that it directed me to respond to was the ineffective assistance of counsel claims that we all believe she was raising with respect to about half of the claims that she had raised in her original petition. I responded to that petition as I agreed with the court. It appeared that she was raising ineffective assistance of counsel claims, and one of the ineffective assistance of counsel claims it looked like she was raising was failure to raise the Rosemond issue. So that's what I responded to. So the substantive Rosemond issue was embedded in a Strickland claim, and that's how the district court treated it? Yes, initially. And that's how I treated it in my response. The petitioner filed some pleadings after that, which could have given rise to, out of an abundance of caution, the court could have construed that as raising a substantive Rosemond claim. And that's kind of how the court treated it. It didn't order me to respond to that, but that's how it treated it in its order. It gave a big Strickland analysis of the Rosemond claim, and then in a sentence it said to the extent that counsel could also be construed as raising a merits-based Rosemond claim, I'm also going to deny it for failure to show prejudice. So the posture when it gets to this court is counsel files their brief and they say, we're not raising a Strickland claim. We're raising a Rosemond merits-based claim. And I pointed out in my brief, well, if you're going to do that, you're going to have to show cause and prejudice. And now they're saying I've waived the argument, and I have not waived the Wainwright-Frady cause and prejudice argument. I responded to what I was told to respond to in the district court, and the district court reached the merits-based argument and rejected it. And I'm, of course, allowed to support whatever ruling the court made below in this court. So it is our position that the Wainwright cause versus prejudice standard applies to the Rosemond claims here. And what's the difference in the prejudice analysis? Well, the problem is, is that if I understand what counsel said today, is that they're alleging the Chapman harmless constitutional error analysis. And that would require us to prove harmlessness beyond a reasonable doubt. So it's a matter of burden shifting more than anything else? Yes. An extraordinary amount of burden shifting, which I think we could meet it anyway. I mean, really? Even the Chapman standard. But I want to make clear, what we're advancing is that Chapman is a direct appeal of a constitutional error. Right. And we're on 2255? We're on a 2255, where we preserve the argument. So we get Wainwright. We get cause and prejudice. Right. And the retroactivity question. Montana said Rosemond is retroactive, but there wasn't really much of a discussion. It was a sentence and then a string cite. Do we need to develop that more in this case? I have been directed to waive that issue, or to concede the issue that Rosemond is retroactive. And it is substantive. It's a substantive rule about the scope of aider and abetter liability? Yes. If we were to do a full-blown retroactivity analysis? Yes. I have no quarrel with this court finding Rosemond retroactive. I don't think it makes a difference in this case, because retroactivity, it gets to some aspects of a 2255. It gets to the statute of limitations, but it doesn't affect the cause and prejudice analysis. Right. It concerns the scope of what the government has to prove to get aider and abetter liability. Correct. On the brandishing claim. That's correct. And the question is whether the petitioner can show actual prejudice in the sense that a properly instructed jury would have acquitted. Right? I think the way it was phrased by this court, and I don't want to sound like I'm quibbling, but by this court in some of the former Governor Ryan's cases, that the standard is whether a properly instructed jury could have convicted is the standard for Frady-type review. Could have convicted. Yes.  And so I may be quibbling, but that's in looking through the cases. The cases are kind of all over. That's the best case where this court said that if a reasonable jury could have convicted, a properly instructed jury could have convicted, then that's enough, which gets us to the facts of this case. Yeah, and can we get into the facts exactly what it was? Because I didn't crawl through the transcript in advance with respect to the fingerprint analysis and the handwriting expert witnesses' testimony. So exactly what did both of them say? There was no fingerprint evidence connecting Farmer to the note. The handwriting evidence was particularly compelling evidence, though. We put a handwriting expert on the stand. I think it was on the second day of trial. His name was Lindell Moore. And what he testified to was that the handwriting on the demand note was in the defendant's handwriting. He could not exclude that anyone else on the planet also had that handwriting because there weren't enough particular characteristics. But after having compared the bank robbery note to her exemplars and also some other documents that she had written not knowing they would be exemplars, that the handwriting on the note was the defendant's handwriting. Now there may be some other human being on the planet who also has that handwriting, but the handwriting on the note was the defendant's handwriting. And that becomes significant when you combine it with the rest of the evidence in the case. Was there any handwriting by other defendants? No. Well, the defense didn't request any. Pardon? No, there was not. The defense didn't request any. And the way this was presented at trial, too, I presented the actual handwriting exemplar and the note to the jury and had the expert explain how they were similar, and a layperson could tell they were similar even without an expert. So you have testimony that it is her handwriting on the note. Now there may be some other human being on the face of the earth who has that handwriting, but when you combine that with the testimony of the co-defendants that she was involved in the robbery, when you combine it with Holly Rice's testimony, which this court has already referred to this morning, talking about how they sat down and they wrote that note 30 minutes before the bank robbery. The handwriting of any other person on the planet is not what's relevant. The question would be the handwriting of the other members of the gang. Yes. Maybe they don't write. It could be. I mean, the defense certainly knew what our evidence was and could have. So no one tried to present handwriting examples from the other defendants? Yes, they did not. They did not. And in terms of the sentencing for Rice, I think, and the other co-defendant who pled, one got 10 years and then the ringleader got 35 years. Did they pick up that time before the trial or were they sentenced after? She was sentenced to that before the trial because I believe the defense counsel made an issue about her complaining about her sentence. Rice, who got the 35 years. Yes. And really, to just close the circle on the evidence combined with the handwriting, we have the testimony of the co-defendants, but we also have phone records hitting the cell towers, and we could put Frenchie Farmer's cell phone following the route all the way to the bank and all the way back. And not only that, they were in separate cars initially. You also have her making phone calls from her cell phone to the occupants of the car. So it's corroborating testimony that of Rice's, it's corroboration of Rice's testimony that she was with us and that she wrote the note. When you take all of that, it's not just based on the testimony of Holly Rice. And when you analyze this in the context of the proper standard, which is the Wainwright-Frady cause and prejudice standard, it is our position that this court should affirm. And if there are no further questions, thank you. Okay, thank you. Ms. Chapwee, do you have anything further? Yes, a few quick points, Your Honor. The cell phone data that the government mentions has nothing to do with the gun crime whatsoever. It may be evidence of the robbery, which we're not contesting, but it provides no additional evidence that Ms. Farmer had advanced knowledge that a gun would be used. Second, with regard to Ms. Farmer's framing of the Roseman issue in her petition, Ms. Farmer attempted to frame the issue as a direct challenge under Roseman, not a Strickland issue, and the supplemental filing that she filed clarifying that was in September 2014, three months before the government's response. It put the court on notice as they discussed her claim on the merits in the alternative, but the government chose, despite the supplemental filing, to ignore that part of her claim. How many of them went into the bank? Or did someone remain in the car? Ms. Farmer. So how many were there then besides her? So there were two others, Mr. Anderson and Ms. Rice. Just two in the bank? That's correct. And they both had guns? That's correct. Finally, I haven't addressed the merits of the Pinkerton argument. It seems very odd to think she didn't know they were carrying guns. Isn't that odd? It's very odd. In order to convict her of a separate offense, not just the bank robbery, which she was convicted of. No, I understand. I find it hard to believe she would not have known they were carrying guns. But the standard in this case is more than hard to believe. I don't know. They have to prove that the error was harmless, and that burden falls on the government. Okay, well, thank you very much.